UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES H. DYER, JR.                                    CIVIL ACTION NO.

VERSUS                                                        19-588-BAJ-EWD

C.R. BARD, INC., ET AL.

## RULING AND ORDER

Before the Court are several pending Motions pending, *to-wit:* (1) the Motion to Compel the Deposition of Dr. Ramin Ahmadi and Production of Plaintiff's Notes Regarding Dr. Ahmadi Relied Upon in Testifying at his Deposition ("Motion to Compel"), filed by Defendants C.R. Bard, Inc. and Bard Peripheral Vascular Inc. ("Defendants"), and related Motions,[1] including a Motion for Leave to File Supplemental Memorandum in Support of Motion to Compel;[2] (2) the Sealed Motion for Leave to File Medical Record Exhibit Under Seal, filed by Defendants, which seeks to file additional medical information under seal;[3] and (3) the Motion to Continue Fact Discovery and Expert Report Deadlines ("Motion to Continue"), filed by Defendants, and related Motions,[4] including a Motion for Leave to File Joint Supplemental Memorandum of Law in further support of the Motion to Continue.[5]

For the reasons explained below, the Motion to Compel is granted in part and a limited deposition of Dr. Ahmadi is ordered. The Motion to Continue is granted to permit time to complete limited additional discovery, and the other pending Motions are also granted.

---

[1] R. Doc. 57 (Motion to Compel), R. Doc. 77 (Plaintiff's opposition memorandum), R. Doc. 78 (Defendants' reply memorandum), R. Doc. 89 (Defendants' supplemental authority), R. Doc. 91 (Plaintiff's supplemental authority) and sealed exhibits in support of the Motion to Compel (R. Docs. 74, 84).
[2] R. Doc. 97.
[3] R. Doc. 98.
[4] R. Doc. 86 (Joint Motion to Continue), and R. Doc. 95 (supplemental memorandum).
[5] R. Doc. 96. The Motion for Leave to file the Joint Supplemental Memorandum withdraws Plaintiff's prior opposition to the Motion to Continue (R. Doc. 92) and converts the Motion to Continue to a joint/consent motion.

I.      **Background**

Plaintiff James Dyer, Jr. has asserted a products liability claim against Defendants alleging that Plaintiff's vena cava filter ("IVC filter"), which was manufactured by Defendants, is defective and/or failing.[6] According to Defendants, the only diagnosis underlying Plaintiff's claim was made by Dr. Ramin Ahmadi ("Dr. Ahmadi") after he ordered a CT scan of Plaintiff in July 2017. The Motion to Compel seeks to compel the deposition of Dr. Ahmadi and the production of notes that Plaintiff consulted while testifying at his deposition.[7]

Shortly after the Motion to Compel was filed, the undersigned held a telephone conference with the parties to discuss the issues raised and the matter was taken under advisement.[8] Defendants subsequently filed the Motion to Continue (which is now joint), as well as additional briefs in support of the Motion to Compel and Motion to Continue, and sealed exhibits primarily consisting of Plaintiff's medical information. The additional briefs raised another discovery issue, *i.e.*, the deposition of Dr. Bryan Griffith, one of Plaintiff's treating physicians, revealed that Plaintiff saw additional medical providers that had not previously been identified (Dr. Curtis Strange and Dr. Kyle Girod). Defendants also want to obtain medical records from those doctors and possibly depose them.[9]

On January 28, 2021, a follow-up telephone conference was held with the parties to address the repeated calls from counsel inquiring as to the status of the pending motions, and also to direct the parties to discuss and attempt to resolve Defendants' requests for discovery and depositions related to the newly-identified medical providers.[10] Following the January 28, 2021 conference,

---

[6] R. Doc. 1; R. Doc. 25; R. Doc. 77, p. 5.
[7] R. Doc. 57. The Motion to Compel was timely filed. *See* R. Doc. 53.
[8] R. Doc. 41.
[9] R. Doc. 87-1, pp. 2-3.
[10] R. Doc. 93.

three additional motions were filed in support of the Motion to Compel and Motion to Continue, all of which will be granted.[11] In their Joint Supplemental Memorandum, the parties advised that they reached an agreement with respect to discovery related to the newly-identified providers and with respect to a subsequent October 9, 2020 CT scan ordered by Dr. Ahmadi;[12] however, they were unable to resolve Defendants' request for Dr. Ahmadi's deposition or the production of Plaintiff's deposition notes.

## II.   Law and Analysis

### A. Applicable Legal Standards

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to a claim or defense[13] and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[14] A court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be

---

[11] Motion for Leave to File Joint Supplemental Memorandum of Law in further support of the Motion to Continue at R. Doc. 96; Motion for Leave to File Supplemental Memorandum in Support of Motion to Compel at R. Doc. 97; and Sealed Motion for Leave to File Medical Record Exhibit Under Seal at R. Doc. 98.

[12] R. Doc. 96, p. 2, R. Doc. 96-1, p. 4, R. Doc. 97-2, p. 3 (Defendants' Supplemental Memorandum in Support of Motion to Compel) and R. Doc. 98-2 (sealed medical record listing Dr. Ahmadi as "ordering physician" for the October 2020 CT scan). Plaintiff's October 9, 2020 CT scan was revealed to Defendants through the report of Dr. David Feldstein, Plaintiff's expert. The October 9, 2020 scan was ordered by Dr. Ahmadi but was taken at Central Imaging Center, a facility different from the one that took the July 2017 scan, and was read by a different physician, Dr. Deana A. Jones. R. Doc. 96-1, p. 3. According to the parties' Joint Supplemental Memorandum, "The Parties are in agreement that Bard should have an opportunity to collect all medical records relating to this new CT scan and any other recent medical treatment obtained by Mr. Dyer, as well as undertake any other written discovery or depositions related thereto; provided, however, that the Parties disagree as to whether Dr. Ramin Ahmadi, who ordered this October 9, 2020 scan, should be deposed." *Id.* at p. 4.

[13] *Crosby v. Louisiana Health Service and Indem. Co.,* 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'"), *citing* Fed. R. Civ. P. 26(b)(1) and *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

[14] Fed. R. Civ. P. 26(b)(1).

obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[15]

Particularly regarding consulting non-testifying expert witnesses, Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure provides:

> (D) *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
> (i) as provided in Rule 35(b); or
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

The Advisory Committee Notes make clear that Rule 26(b)(4) "does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit." According to the Notes, "[s]uch an expert should be treated as an ordinary witness."[16]

### B. Defendants Will Be Granted a Limited Deposition of Dr. Ahmadi

Defendants assert that, according to Plaintiff's medical records and testimony, Dr. Ahmadi issued the medical directive that ordered the July 14, 2017 CT scan, interpreted the scan, and made the diagnosis that Plaintiff's IVC filter is failing.[17] In particular, Defendants rely on several medical records produced in discovery, which reflect that Dr. Ahmadi, an out-of-state medical

---

[15] Fed. R. Civ. P. 26(b)(2)(C).
[16] *In re Taxotere (Docetaxel) Products Liability Litigation,* No. MDL 16-2740, 2018 WL 5669019, at *3 (E.D. La. Nov. 1, 2018).
[17] R. Doc. 57-2, p. 5 and *see* R. Doc. 77, p. 5.

4

provider,[18] was listed as the "referring provider" authorizing the CT scan.[19]   The July 13, 2017 One Call Care ("One Call") Diagnostics Provider Appointment Authorization Form, which orders "CT abdomen without contrast," lists Dr. Ahmadi as "referring physician," states that the chief complaint is "unspecified injury of inferior vena cava, subsequent encounter," and requests: "Please send CD of images to the Referring Physician."[20]  The July 14, 2017 form from Medical Center Diagnostics, the facility who took the scan, reflects "Ahmadi, Ramin" as the "Referring Provider;" a "Study" of "CT abdomen w/o dye" was taken; and, the "Diagnostics" description is listed as "unspecified injury of inferior cava—initial encounter."[21]   A Health Insurance Claim Form submitted on behalf of Plaintiff for the July 2017 scan also lists "Ramin Ahmadi" as "Name of Referring Provider or Other Source."   Defendants contend that no other documents, notes, or other records were produced relating to the scan, including any documents indicating the basis underlying the reasons for the scan.[22]

Plaintiff testified (after looking at a piece of paper that he read from), that Dr. Ahmadi (whom Plaintiff testified works for his attorneys), was the only doctor that told him that his filter was "failing."[23]  Plaintiff never saw Dr. Ahmadi in person and never spoke to him, but "that's whose name was on the paper they sent me back from the imaging center. And he checked it," and "He's the one that signed [the image taken] that the filters damaged my organs, or the filter

---

[18] According to documents filed by Defendants, Dr. Ahmadi is licensed as a physician in Connecticut. R. Doc. 57-2, p. 9, R. Doc. 57-7, p. 2, and Doc. 57-8, pp. 2-3. Dr. Ahmadi initially ordered the July scan on July 13, 2017 using a "One Call Care Diagnostics Provider Appointment Authorization Form" that lists a California address for Dr. Ahmadi and was faxed to Medical Center Diagnostics, which is located in Covington, Louisiana. R. Doc. 74, p. 10. One Call appears to be the insurance provider for the July 2017 scan. *See* R. Doc. 74, p. 6 under "Coverage information." Plaintiff agrees that Dr. Ahmadi is licensed in Connecticut and avers that the California address is the billing address of One Call, where the July 2017 image was to be sent. R. Doc. 77, p. 8, n. 21, and p. 12.
[19] R. Doc. 74, p. 6 (July 14, 2017 Medical Center Diagnostics sheet), and p. 10 (July 13, 2017 One Call Diagnostics Provider Appointment Form).
[20] R. Doc. 74, p. 10.
[21] R. Doc. 74, p. 6. The Medical Center Diagnostics form also lists a California address for Dr. Ahmadi. *Id.*
[22] R. Doc. 57-2, pp. 7-8.
[23] R. Doc. 57-9, pp. 8-10, 14. Plaintiff was equivocal about whether the words "failing" or "failed" were actually on the image that he received. R. Doc. 57-9, pp. 13-14.

failed."[24] Plaintiff later testified that there may have been another paper that accompanied the image that he received from the imaging center, and on that paper it said "the device failed."[25] Plaintiff was "sure" that Dr. Ahmadi diagnosed him with the alleged mode of failure of his filter listed on his plaintiff profile form (*i.e.*, "three struts perforate the plaintiff's IVC, embedded IVC filter") and the "failed" diagnosis was based on the image of the July 2017 CT scan Plaintiff received that Dr. Ahmadi signed.[26]

Plaintiff testified that, likely before the July 2017 scan, he spoke with his family doctor, Dr. Derrius Ray, about the filter and Dr. Ray told him to "leave it alone, as long as it's not bodily hurting you." Plaintiff did not speak to any other medical professionals about the July 2017 scan after it was taken, and no other doctor ever told him that his filter was failing or that there was anything wrong with it.[27] Following Plaintiff's testimony, Defendants requested Dr. Ahmadi's deposition; however, Plaintiff objected to the deposition on the grounds that Dr. Ahmadi is a consulting expert.[28] The parties subsequently conferred regarding the deposition of Dr. Ahmadi, but were unable to resolve the dispute.[29] Defendants assert three arguments in support of deposing Dr. Ahmadi: Dr. Ahmadi is a treating physician, or wears "two hats;" that exceptional circumstances warrant Dr. Ahmadi's deposition because it would be impossible for Defendants to obtain information on the same issue by any other means; and finally, Plaintiff waived any

---

[24] R. Doc. 57-9, pp. 9-10.
[25] R. Doc. 57-9, p. 13.
[26] R. Doc. 57-9, p. 16-17. The plaintiff profile form referred to in Plaintiff's deposition transcript does not appear to be attached to any of the Motion papers. However, the interpretation of Plaintiff's July 2017 CT scan reflects that the impression of the scan was "No significant tilting of IVC filter; however, all IVC struts penetrate IVC wall. At least 3 struts also penetrate into adjacent small vessels/lymph nodes. No mechanical failure or breakage of the IVC filter." R. Doc. 58-2, p. 5 (sealed) but which Plaintiff filed unsealed into the record at R. Doc. 77-3, p. 9. Plaintiff testified that Dr. Ahmadi was the basis for this statement (R. Doc. 57-9, p. 21) but the scan lists the interpreting physician as Dr. T. Henry Vreeland. R. Doc. 77-3, p. 9.
[27] R. Doc. 57-9, pp. 11-12, 149.
[28] R. Doc. 57-2, p. 10.
[29] R. Doc. 57-2, p. 11.

6

applicable privilege relating to Dr. Ahmadi pursuant to the partial disclosure or "placing at issue" doctrines.[30]

*Dr. Ahmadi As A Consulting Versus Treating Physician*

Defendants first contend that, while Dr. Ahmadi may have been retained as a consulting expert, at some point, it is "possible for a witness to wear two hats"—one as an expert and one as a fact witness, and when that happens, "some of the information that the expert holds may be protected, while other such information may be subject to disclosure."[31] Defendants contend that the Court must consider whether Dr. Ahmadi acquired any information as a fact witness that is subject to disclosure, and the facts developed during discovery and discussed above show that Dr. Ahmadi acted a treating physician when he ordered the July 2017 scan and interpreted it. Defendants contend that, in order for Dr. Ahmadi to comply with Louisiana law in ordering the scan, Plaintiff would have to be Dr. Ahmadi's patient, with an existing patient-physician relationship, and Dr. Ahmadi should have evaluated Plaintiff in order to determine that the scan was medically necessary and appropriate.[32] Therefore, according to Defendants, "Plaintiff cannot possibly contend that these actions, and Dr. Ahmadi's subsequent review and assessment of the imaging and related reporting, do not constitute medical treatment of Plaintiff."[33]

Defendants argue that Plaintiff's reliance on the decision in *Sweezey v. C R. Bard. Inc.*, ("*Sweezey*"), where that court quashed the deposition of Dr. Ahmadi on the basis that he was a consulting expert, is nondispositive of the instant Motion. Defendants argue that the one-page

---

[30] R. Doc. 57, pp. 17-24; R. Doc. 78, pp. 11-13.
[31] R. Doc. 57-2, pp. 12-13, *citing Jones v. Celebration Cruise Operator, Inc.*, ("*Jones*"), No. 11-61308, 2012 WL 1029469 (S.D. Fla. Mar. 26, 2012) (other citations omitted); *In re Taxotere (Docetaxel) Products Liability Litigation*, No. MDL 2740, 2018 WL 8519149, (E.D. La. Aug. 28, 2018) ( "*Taxotere- August*"); and Fed. R. Civ. P. 26(b)(4).
[32] R. Doc. 57-2, p. 14 *citing* Louisiana State Board of Medical Examiners, Advisory Opinion FAQs, La. R.S. 37:3213(D), La. R.S. 37:1291.1 and citing the deposition testimony of Dr. Darren Hurst, Plaintiff's interventional radiology expert at R. Doc. 57-12.
[33] R. Doc. 57-2, p. 14.

*Sweezey* decision contains no reasoning and Defendants have asserted waiver arguments that were not raised in *Sweezey*.[34]

Defendants also argue that no other doctor before Dr. Ahmadi recommended imaging of Plaintiff's IVC filter, found that Plaintiff had an "unspecified injury of vena cava," necessitating CT imaging, or found that Plaintiff's filter had failed.  However, because Dr. Ahmadi made these determinations and diagnoses relating to Plaintiff, which are the basis for Plaintiff's claims and damages in this matter, Defendants should be allowed to depose Dr. Ahmadi as a fact witness and treating physician to determine: the medical basis for Dr. Ahmadi's decision to order the CT scan in the first instance (and the newly discovered October 9, 2020 CT scan, also ordered by Dr. Ahmadi);[35] the information Dr. Ahmadi derived from the scan(s); and Dr. Ahmadi's subsequent diagnoses or recommendations to Plaintiff, including the basis for telling Plaintiff that his filter was "failing" after the July 2017 scan.[36] In arguing that Dr. Ahmadi wore the hat of a treating physician when he ordered the scan, Defendants rely on *Jones v. Celebration Cruise Operator, Inc.*[37] According to Defendants, in *Jones*, the court permitted the defendants to subpoena the records of a doctor who ordered (but did not perform) an MRI of the plaintiff at the request of his counsel, and then recommended a course of treatment for the plaintiff.  The *Jones* court held that, although the plaintiff retained the doctor as a consulting expert, the doctor took on the role of a treating physician when he recommended treatment different from any of the plaintiff's other doctors.[38] Defendants also rely on *Taxotere-September*, in which the Eastern District of Louisiana ordered production of the pathology reports, not just the underling tissue samples, of doctors

---

[34] R. Doc. 6, n. 2.  *See Sweezey,* No. 19-2172 (N.D. Tex. Jan. 23, 2020) at R. Doc. 93.
[35] R. Doc. 97, p. 1.
[36] R. Doc. 57-2, p. 13, 16.
[37] No. 11-61308, 2012 WL 1029469 (S.D. Fla. Mar. 26, 2012).
[38] *Id.* at *3.

8

retained as consulting experts who performed punch biopsies of the plaintiffs' scalps, finding that the reports were objective results of the testing performed and subject to production.[39]

Citing the North District of Texas's *Sweezey* ruling, Plaintiff contends that discovery should be precluded from Dr. Ahmadi because he is a non-testifying consultant and all three elements of Fed. R. Civ. P. 26(b)(4)(D) have been met. First, Dr. Ahmadi was retained purely as a consulting expert whose only involvement with Plaintiff was to order the July 2017 scan at the request of Plaintiff's counsel. According to Dr. Ahmadi's Declaration, Dr. Ahmadi did not perform, see, interpret, or issue any reports regarding the scan, did not speak with Plaintiff or any other medical providers regarding interpretation of the July 2017 scan, and will not provide or recommend any medical treatment for Plaintiff.[40] Plaintiff avers that One Call arranged for the scan, Medical Center Diagnostics performed the scan, and another doctor, Dr. T. Henry Vreeland, interpreted and signed the scan and diagnosed that "all IVC struts penetrate IVC Wall. At least 3 struts also penetrate into adjacent small vessels/lymph nodes."[41] As a result of the IVC filter perforation of Plaintiff's IVC, Plaintiff filed the instant suit on April 1, 2018 in the Bard Multidistrict Litigation, MDL 2641.[42]

---

[39] R. Doc. 57-2, pp. 15-16 *citing Taxotere-August,* 2018 WL 8519149 at *4, ("To suggest that the punch biopsies are not a form of medical treatment ignores reality and common sense" and ordering the reports be produced to the court for *in camera* review); *In re Taxotere (Docetaxel) Products Liability Litigation*, No. MDL 2740, 2018 WL 8519150, **1, 3-5 (E.D. La. Sept. 24, 2018) ("*Taxotere-September*") (ordering production of the pathology reports after *in camera* review, finding that the doctors acted as treating physicians and also that the defendants established exceptional circumstances warranting production); and *In re Taxotere (Docetaxel) Products Liability Litigation*, No. MDL 2740, 2018 WL 5669019 (E.D. La. Nov. 1, 2018) ("*Taxotere-November*") (affirming production of the pathology reports, but on the basis of Fed R. Civ. P. 35 and the finding that the doctors were not consulting experts because these doctors did more than review the records of other providers. "These doctors saw the Plaintiffs in person or, in some cases, examined Plaintiffs' tissue. They acquired their information through percipient observations. Because of this, they fall outside of the definition of consulting experts. If these doctors, who are designated as non-testifying experts, had only reviewed medical records and never met with the Plaintiffs or observed their tissue samples, then they would be consulting experts. Similarly, these experts do not qualify as treating physicians. As previously noted, the doctors were selected, retained, and paid by the PSC, not by the individual Plaintiffs. While the doctors may have made diagnoses and recommendations as Judge North observed, the doctors communicated these opinions directly to the PSC, not to the Plaintiffs.") *Id.* at **4-5.
[40] R. Doc. 77, pp. 4, 7 and R. Doc. 77-6, p. 2.
[41] R. Docs. 77, pp. 5-7 *citing* R. Doc. 77-3, p. 7.
[42] R. Doc. 77, pp. 5-6.

Plaintiff additionally argues that the July 2017 scan does not form the basis for any of Plaintiff's ongoing medical care because Plaintiff's treating physician, Dr. Ray, has not seen any imaging of Plaintiff's filter. Further, Dr. Ryan Majoria, the doctor who implanted the filter in 2005, has not seen Plaintiff since he implanted the device, has not spoken with any of Plaintiff's other providers, and was not aware of Plaintiff's current condition. Plaintiff argues that there is no evidence that any of Plaintiff's treating physicians have seen the July 2017 scan or Dr. Vreeland's report.[43]

Plaintiff also contends that the One Call appointment authorization form relied upon by Defendants that lists Dr. Ahmadi as referring physician is not a prescription and was not signed by Dr. Ahmadi, nor did he sign the imaging of the July 2017 CT scan.[44] Plaintiff testified that he never saw or spoke to Dr. Ahmadi.[45] Further, when Plaintiff testified that Dr. Ahmadi opined that Plaintiff's IVC filter "failed" and Dr. Ahmadi checked the scan, Plaintiff was confused because Dr. Ahmadi's Declaration under oath avers that he did not perform or interpret the July 2017 CT scan, and the report of the imaging reflects that the scan was interpreted and the perforation diagnosis was rendered by Dr. Vreeland, whom Defendants could, but have chosen not to, depose (as of the time of the briefing).[46] Plaintiffs contend that the imaging and interpretation services performed by Medical Center Diagnostics were independent of Dr. Ahmadi, whose only connection to Plaintiff was in referring Plaintiff to Medical Center Diagnostics to undergo the scan.[47]

---

[43] R. Doc. 77, p. 7, *citing* R. Doc. 77-7, p. 4 (Ray deposition transcript); R. Doc. 77-8, pp. 3-5 (Majoria deposition transcript).
[44] R. Doc. 77, p. 7 and R. Doc. 74, p. 12 (under seal).
[45] R. Doc. 77, p. *citing* R. Doc. 77-2.
[46] R. Doc. 77, p. 8 *citing* R. Doc. 77-2, pp. 7-8 (Plaintiff's deposition testimony); R. Doc. 77-6, p. 2 (Ahmadi Declaration); and R. Doc. 77-3, pp. 6-7 (report of July 2017 CT scan).
[47] R. Doc. 77, p. 8.

Next, Plaintiff contends Dr. Ahmadi will not be called to testify by Plaintiff, and any opinions or work product generated by him will not be reviewed by Plaintiff's testifying experts.[48] Rather, Plaintiff has designated other experts who will testify regarding Plaintiff's condition based on imaging available to Defendants that can be read and interpreted by their own experts. Plaintiff argues that Defendants incorrectly state that the evidence of Plaintiff's perforated filter would not have existed but for Dr. Ahmadi's role in this case because it "disregards actual imaging performed in this case" as well as "literature" regarding progressive IVC filter perforations.[49] Further, Plaintiff argues that Dr. Ahmadi has no first-hand knowledge regarding Plaintiff, and the only knowledge he has regarding Plaintiff was acquired through consultation with Plaintiff's counsel.[50] Plaintiff contends that, despite the implication by Defendants, Dr. Ahmadi did not act inappropriately in ordering the scan, which is justified by "sufficient literature."[51] Plaintiff avers that *Jones* is distinguishable because, in that case, the consulting expert recommended surgery for the plaintiff, and thus took on the role of a treating physician; however, Dr. Ahmadi has not recommended treatment for Plaintiff and is not an actor with respect to Plaintiff's medical care.[52] Similarly, Plaintiff argues that the *Taxotere* decisions are distinguishable because the doctors performed punch biopsies on the plaintiffs, and their reports were required to be produced after *in camera* inspection; in this case, both the imaging and reports have already been produced to Defendants.[53]

---

[48] R. Doc. 77, p. 9, 12 and R. Doc. 77-4 (Declaration of counsel for Plaintiff, Ben C. Martin).
[49] R. Doc. 77, p. 9 and R. Doc. 77-10.
[50] R. Doc. 77, p. 9 and R. Doc. 77-6, p. 2.
[51] R. Doc. 77, pp. 9-10 *citing* R. Doc. 77-10 (an article that, according to Plaintiff, surmises (in part): "Caval penetration is a frequent complication of IVC filter placement.").
[52] R. Doc. 77, p. 11.
[53] R. Doc. 77, p. 11. Plaintiff also seeks to quash a deposition subpoena and subpoena duces tecum directed to Dr. Ahmadi. R. Doc. 77, p. 13. There is no deposition subpoena or subpoena duces tecum directed to Dr. Ahmadi in this case. The subpoenas filed by Plaintiff order Dr. Ahmadi's deposition in the *Sweezey* case. R. Doc. 77-11. However, even if there were, this request is not properly asserted in an opposition memorandum but should be asserted via appropriate motion. As Plaintiff's request to quash subpoenas is not properly before the Court, it is not considered.

11

In Reply, Defendants assert that the order sent from Dr. Ahmadi authorizing the imaging of the July 2017 scan was medical treatment of Plaintiff, which alone authorizes Dr. Ahmadi's deposition, including the basis for and circumstances surrounding the order. Dr. Vreeland cannot testify regarding the reasons why Dr. Ahmadi ordered the scan; Dr. Ahmadi's Declaration also does not explain why he issued the order for the scan; and Defendants are not bound to accept Plaintiff's assertions that the scan was ordered at the request of counsel and/or was justified by medical literature. Rather, Defendants are entitled to depose Dr. Ahmadi to test the veracity of these statements and to learn the basis for the order.[54] Defendants further argue that Dr. Ahmadi's Declaration is not more credible than Plaintiff's testimony, and Defendants should be permitted to depose Dr. Ahmadi to inquire into its contents and test its credibility. Defendants point out that while the imaging attached to their Motion did not have Dr. Ahmadi's name, additional imaging they have obtained contains Dr. Ahmadi's name.[55]

Defendants reiterate that Dr. Ahmadi is the only doctor to have recommended that Plaintiff undergo testing related to his IVC filter, and to have listed that Plaintiff's "Chief Complaint" was "unspecified injury of inferior vena cava," a finding not made by any other doctor. As such, Defendants are entitled to find out why Dr. Ahmadi ordered the scan because that alleged injury is the basis for Plaintiff's claims in this case. Defendants assert that, based on Plaintiff's opposition memorandum and Dr. Ahmadi's Declaration, Dr. Ahmadi's order for the scan "may be the only work Dr. Ahmadi has in fact done to date relating to Mr. Dyer—effectively stripping him of any purported 'consulting expert' protection."[56]

---

[54] R. Doc. 78, pp. 2, 7-8.
[55] R. Doc. 78, pp. 8-9 and R. Doc. 84, pp. 2-336 (sealed images of Plaintiff's abdomen).
[56] R. Doc. 78, p. 7 *citing* R. Doc. 77, p. 8 (Dr. Ahmadi's only connection with Plaintiff was to order the scan); R. Doc. 77, p. 12 (noting that "In the event that Dr. Ahmadi produces any work product….," which suggests to Defendants that he has not yet produced any); and R. Doc. 77-6, p. 2 (Ahmadi Declaration that he did not interpret the imaging and has not made any recommendations as a result of the imaging).

The *Jones* and *Taxotere* decisions, while instructive, are not controlling. *Jones* is distinguishable, as there the doctor was retained as a consulting expert and ordered an MRI of the plaintiff, which he did not perform or read. However, after the MRI, the doctor himself conducted an IME of the plaintiff at the request of the plaintiff's counsel and recommended a course of treatment directly to the plaintiff, and thus wore the hat of a treating physician. In this case, Dr. Ahmadi did not conduct an IME or take the scan of Plaintiff, nor does it appear that he recommended a course of treatment directly to Plaintiff.

The court in *Taxotere-August* and *Taxotere-September* held that the doctors retained as consulting experts also conducted punch biopsies on the plaintiffs and were treating physicians, such that their pathology reports had to be produced; however, on review, of the magistrate judge's decision, the district judge found that the doctors were not consulting experts because they did more than just review the findings of other doctors—rather, they conducted the punch biopsies themselves. However, the district judge found they were also not treating physicians, because they were retained by the plaintiffs' counsel, not the plaintiffs, and while they may have made diagnoses, they made them to the plaintiffs' counsel, not directly to the plaintiffs, and never treated the plaintiffs again. Thus, the district judge held that Fed. R. Civ. P. 26 did not apply at all and instead held that the doctors were Fed. R. Civ. P. 35 examining experts who essentially conducted IMEs of the plaintiffs. Their pathology reports were subject to production according to Fed. R. Civ. P. 35.[57]

While not entirely on point, the balance of the factors considered in *Taxotere-November* indicate that Dr. Ahmadi may not be a treating physician such as the doctor in *Jones* because he was retained by Plaintiff's counsel, he did not personally conduct any imaging of Plaintiff, he did

---

[57] *Taxotere-November*, 2018 WL 5569019, at **4-5.

not recommend any treatment directly to Plaintiff, and both he and Plaintiff agree that he has never met with or spoken to Plaintiff—although he did at least order the July 2017 and October 2020 scans, and according to Plaintiff, interpreted the July 2017 scan.  Likewise, applying *Taxotere-November*, whether or not Dr. Ahmadi is a consulting expert is also an open question, because it appears that he was retained by counsel to review the work of others, yet he personally ordered the scan that initiated this litigation, his name is on some of Plaintiff's scans, and Plaintiff testified that Dr. Ahmadi interpreted the July 2017 scan and diagnosed that Plaintiff's filter is failing.  Dr. Ahmadi does not appear to be an examining physician either, as he did not personally conduct an exam of Plaintiff.  Thus, while *Taxotere-November* provides guidance, it is not determinative of the treatment of Dr. Ahmadi in this case.

  The *Sweezey* motion to quash and the *Sweezey* Court's one-page ruling were reviewed, and the facts of *Sweezey* appear distinguishable because, in that case, Dr. Ahmadi apparently stated that he only ordered the scan and did not interpret it.[58]  However, in this case, there is a factual dispute as to this issue because Plaintiff testified that Dr. Ahmadi "checked" the scan, "signed that the filters damaged my organs, or the filter failed," and "signed the image" of the July 2017 CT scan that was sent to Plaintiff.[59]  While counsel argues that Plaintiff was confused during this deposition, and relies on Dr. Ahmadi's Declaration, which states that Dr. Ahmadi did not interpret the scan, Plaintiff's testimony reflects that Plaintiff believes that Dr. Ahmadi interpreted and/or

---

[58] *Sweezey,* No. 19-2172, (N.D. Tex. Dec. 30, 2019) at R. Doc. 61 and (N.D. Tex. Jan. 23, 2020) at R. Doc. 93.  The parties refer to *Berg v. C.R. Bard, Inc.,* No. 19-3216 (E.D. WA. Nov. 19, 2020) at R. Doc. 44, in which the court also denied a request for Dr. Ahmadi's deposition. However, the decision's analysis is relatively brief, and like *Sweezey,* does not appear to feature similar facts, including testimony regarding Dr. Ahmadi's alleged interpretation of the scan and diagnosis of Plaintiff's filter.  R. Doc. 77, p. 14, n. 32;  R. Doc. 78, p. 1, n. 1.  Likewise, Plaintiff's Notice of Supplemental Authority relies on *Stefan v. C.R. Bard, Inc. et al.*, No. 19-1333 (E.D.W.I. Jan. 25, 2021), at R. Doc. 31 and *Flemming v. C.R. Bard Inc., et al.*, No. 19-1400 (D. Conn. Jan. 26, 2021) at R. Doc. 34, in which the district courts of Wisconsin and Connecticut both denied requests for Dr. Ahmadi's deposition; however, these rulings are in the form of court minute entries that do not provide analysis helpful to resolution of the instant Motion to Compel, and do not indicate if there was conflicting testimony as is present here.  R. Doc. 91-1, p. 2 and R. Doc. 91-2, p. 2.
[59] R. Doc. 57-9, pp. 9-10.

signed the scan, as discussed above. This testimony conflicts with allegations that Dr. Ahmadi has no firsthand knowledge about Plaintiff's case and made no medical diagnosis regarding Plaintiff, to the extent Dr. Ahmadi ordered two scans, and interpreted at least one scan, and made a diagnosis that Plaintiff's IVC filter is failing. Such interpretation and diagnosis, if they in fact happened, may have rendered Dr. Ahmadi an actor or viewer with respect to at least one transaction or occurrence that is part of the subject matter of the lawsuit and outside of Fed. R. Civ. P. 26(b)(4)(D).[60]

Because Dr. Ahmadi issued a medical order for the July 2017 scan, the factual dispute as to whether Dr. Ahmadi interpreted that scan and diagnosed Plaintiff's filter as failing, the questions as to Dr. Ahmadi's exact role in ordering the scan, and the fact that Dr. Ahmadi then ordered the October 2020 scan, Defendants should be permitted to take at least a limited deposition of Dr. Ahmadi, at a date and time and in a manner mutually agreeable to the parties, to question him regarding his medical involvement with Plaintiff's CT scans, including why he ordered them, and to elicit his testimony under oath regarding whether or not he interpreted the scans, made a diagnosis (and if so, what the diagnosis was), and whether he signed the scans (and the significance, if so). The scope of the deposition would be accordingly limited to those issues, only, as Plaintiff has not refuted Dr. Ahmadi's representations that he did not conduct the actual imaging; never saw or spoke to Plaintiff on any issue; never spoke to Plaintiff's doctors or the persons who conducted the imaging; and never suggested or directed any treatment or surgery to Plaintiff as a result of the imaging.[61]

---

[60] Defendants' Notice of Supplemental Authority points out that, earlier this year, the Eastern District of New York granted an extension of the fact discovery deadline and ordered that a deposition subpoena be served on Dr. Ahmadi in connection with a CT scan that he ordered of the plaintiff in that case. R. Doc. 89-1, *citing Johnson v. C.R. Bard Incorporated, et al.*, No. 19-5212 (E.D. N.Y., Jan. 22, 2021), at R. Doc. 36. To the extent Plaintiff attempts to detract from this order by arguing that the order requiring service of a deposition subpoena on Dr. Ahmadi "did not order that Dr. Ahmadi be presented for a deposition," the distinction is unpersuasive. R. Doc. 91, p. 1.
[61] R. Doc. 77-6, p. 2.

*Exceptional Circumstances Justifying A Limited Deposition*

Even if Dr. Ahmadi were purely a consulting expert, which is not clear, exceptional circumstances exist pursuant to Fed. R. Civ. Rule 26(b)(4)(D)(ii) to justify a deposition limited to probing the basis for Dr. Ahmadi's ordering of the July 2017 and October 2020 scans, and whether he interpreted the scans and/or rendered a diagnosis, because Dr. Ahmadi is the only physician who ordered these scans and therefore is the only witness who has first hand knowledge of the basis for the order, and because the July 2017 scan appears to be the grounds upon which Plaintiff initiated his claims.[62] Neither Dr. Vreeland nor Dr. Jones can provide firsthand information as to why *Dr. Ahmadi* ordered the scans, and therefore Plaintiff's argument on this point has no merit.[63]

Accordingly, the Motion to Compel will be granted in part, compelling a limited deposition of Dr. Ahmadi as described above.[64]

*The Notes Are Public Record*

Defendant also seeks production of handwritten notes to which Plaintiff referred during his deposition testimony under Fed. R. Evid. 612, which requires production of materials a witness uses to refresh memory while testifying. In the one paragraph devoted to opposing Defendants' request,[65] Plaintiff does not really explain why the notes should not be produced. Regardless, no extensive analysis of this issue is necessary. Although Plaintiff was permitted to submit the notes

---

[62] *See, e.g., Taxotere-September,* 2018 WL 8519150, at *5 ("As for Francis, she identifies Claiborne as the only physician who conducted a "skin biopsy" and Dr. Thompson as the only physician to have issued a "Dermatopathology Report." Because that pathology report includes a diagnosis related to her medical claims, exceptional circumstances would mandate its disclosure even if it were not otherwise discoverable.") In light of the rulings ordering the deposition, Defendants' other argument, that the Plaintiff waived any applicable privileges via the partial disclosure or "placing at issue" doctrines, is not reached. R. Doc. 57-2, pp. 19-24; R. Doc. 78, pp. 12-13.
[63] R. Doc. 77, p. 13.
[64] The parties were advised during the telephone conferences related to these motions that this was the likely outcome of the Motion to Compel, largely for the reasons contained in this Ruling. The parties are reminded of their professional obligations to deal in good faith with each other and with the Court. It is fairly obvious that Plaintiff's testimony regarding his belief about Dr. Ahmadi's role in his diagnosis, although perhaps mistaken, is a sufficient basis to permit at least a limited deposition of Dr. Ahmadi to clarify the discrepancy. It is likewise fairly obvious that, if Dr. Ahmadi testifies consistently with his Declaration, there is no need to belabor these points.
[65] R. Doc. 77, p. 16.

under seal for *in camera* review,[66] the notes were filed into the record without seal.[67]  Accordingly, the notes are public record and certainly no longer protected by any confidentiality.

### C. A Short Continuance of Deadlines is Warranted

In light of the granting of the Motion to Compel, and the agreed-upon additional discovery related to newly-identified medical providers, *i.e.*, Dr. Curtis Strange and Dr. Kyle Girod, and the October 9, 2020 scan, a short continuance of the fact and expert discovery deadlines is warranted, as newly discovered facts may impact expert disclosures.[68]  Therefore, the parties' Joint Motion to Continue shall be granted, and a separate Amended Scheduling Order will be issued.[69]

### III. Conclusion

Accordingly,

**IT IS ORDERED** that Motion for Leave to File Joint Supplemental Memorandum of Law in further support of the Motion to Continue,[70] the Motion for Leave to File Supplemental Memorandum in Support of Motion to Compel[71] and the Sealed Motion for Leave to File Medical Record Exhibit Under Seal,[72] all filed by Defendants Bard Peripheral Vascular Inc. and C.R. Bard Inc., are **GRANTED.**  The Clerk of Court is directed to file the Joint Supplemental Memorandum at R. Doc. 96-1 and the Supplemental Memorandum at R. Doc. 97-2 into the record and is directed to file the Medical Record at R. Doc. 98-2 into the record under seal.

---

[66] R. Doc. 72 ("Plaintiff's opposition is due by no later than **November 25, 2020** and shall include an explanation of the basis for redaction of the notes and a copy of any privilege log regarding the notes.  The notes should be filed under seal for an *in camera* inspection, if necessary.") (emphasis in original).
[67] R. Doc. 91-3.
[68] R. Doc. 96-1, pp. 2-4.
[69] R. Doc. 86.
[70] R. Doc. 96.
[71] R. Doc. 97.
[72] R. Doc. 98.

**IT IS FURTHER ORDERED** that the First Motion to Compel the Deposition of Dr. Ramin Ahmadi and Production of Plaintiff's Notes Regarding Dr. Ahmadi,[73] filed by Defendants Bard Peripheral Vascular Inc. and C.R. Bard Inc., is **GRANTED IN PART**. Defendants are permitted to conduct a limited deposition of Dr. Ahmadi, at a date and time and manner mutually agreeable to the parties, to question him regarding his medical involvement with Plaintiff's CT scans, including why he ordered the scans, and to elicit his testimony under oath regarding whether or not he interpreted the scans and made a diagnosis (and if so, what the diagnosis was), and whether he signed the scans. Defendants' request for the handwritten notes to which Plaintiff referred during his deposition testimony does not require disposition as Plaintiff filed those notes into the record of this case without seal.

**IT IS FURTHER ORDERED** that the Joint Motion to Continue Fact Discovery and Expert Report Deadlines[74] is **GRANTED** for good cause, in light of the granting of the Motion to Compel and the necessary discovery related to additional medical providers newly-identified, *i.e.*, Dr. Curtis Strange and Dr. Kyle Girod, and the October 9, 2020 scan. A separate Amended Scheduling Order will issue.

Signed in Baton Rouge, Louisiana, on April 8, 2021.

*Erin Wilder-Doomes*
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[73] R. Doc. 57.
[74] R. Doc. 86.